UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JANA FARRAR,<br><br>            Plaintiff,<br><br>     v.<br><br>RECEIVABLE MANAGEMENT SERVICES,<br><br>            Defendant. | Case No. 09-cv-149-JPG |

# MEMORANDUM AND ORDER

This matter comes before the Court on Plaintiff Jana Farrar's (hereinafter "Farrar") Motion for Attorneys' Fees (Doc. 48). Specifically, Farrar seeks to collect $8,287.70 in attorneys' fees and costs from Defendant Receivable Management Services (hereinafter "Receivable") pursuant to the fee-shifting provision of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. Receivable filed a Response (Doc. 51) to the instant motion, and Farrar filed a Motion for Leave to File a Reply Brief (Doc. 52) thereto. Finding the motion for leave to be made in good faith and the relief requested therein to largely comport with the applicable rules, *see* S.D. Ill. L. R. 5.1(c) ("Pursuant to Federal Rule of Civil Procedure 6(d) . . . , whenever a document is served electronically, three days are added to the prescribed [seven-day] response time [governing a motion for attorneys' fees, thereby creating a ten-day response period ]."), the Court **GRANTS** said motion (Doc. 52) and accepts Farrar's reply as timely.

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Farrar's request for attorneys' fees (Doc. 48).

## ANALYSIS

I.      **Farrar's Motion for Attorneys' Fees Is Both Timely and Proper**

Before it can assess the reasonableness of Farrar's request for attorneys' fees, the Court must first address a preliminary issue. Namely, Receivable contends that Farrar prematurely filed her motion for attorneys' fees, thereby breaching the settlement agreement and rendering Farrar liable for *Receivable's* attorneys' fees. This issue may be disposed of quickly, as Receivable's argument is without merit.

The settlement agreement between Farrar and Receivable states, in relevant part, as follows:

> For purposes of recovering attorney fees only, the PARTIES agree to *negotiate the amount of reasonable attorney fees to be paid to the Plaintiff's attorneys within fourteen (14) days of the effective date hereof.* If the PARTIES are unable to agree on the amount of attorney fees, the PARTIES shall submit the issue to the court for determination. . . . ."

(Doc. 48, p. 20) (emphasis added). As the Court understands it, the settlement agreement became effective on January 11, 2010, and Farrar filed the instant motion on January 18, seven days before the prescribed "wait and see" period expired. According to Receivable, this chronology, in and of itself, precludes Farrar from recovering attorneys' fees.

However, a plain reading of the aforementioned provision does not lend itself to this result. The Court reads the provision to provide a fourteen-day window governing *payment* of attorneys' fees. Put another way, the amount of attorneys' fees could be discussed before[1] or after execution of the settlement agreement, so long as payment occurred within fourteen days of its execution. As the text further indicates, the parties included the "wait and see" period in

---

[1]This in fact occurred, as discussed *infra*.

the settlement agreement so that they could "negotiate" plaintiff's attorneys' fees. This implies that *each* party would communicate and compromise with the other. *See Black's Law Dictionary* 1064-65 (8th ed. 2004) (listing the first definition of "negotiate" as "[t]o communicate with *another* party for the purpose of reaching an understanding" and the first definition of "negotiation" as "[a] *consensual* bargaining process in which the *parties* attempt to reach agreement on a disputed or potentially disputed matter") (emphasis added). However, from January 11 to January 18, neither party contacted, let alone attempted to negotiate with, the other. This justifies Farrar's premature filing, as it was reasonable for her to believe on January 18 that successful negotiation and payment of attorneys' fees by January 24 was not going to happen.

Perhaps more importantly, the Court notes that, prior to January 11, discussions regarding attorneys' fees took place between the parties' attorneys. The parties afforded themselves plenty of time for such discussions, as they agreed to bifurcate settlement on October 29, 2009, and Farrar received the settlement agreement in mid-December. These discussions ended with the settlement "ball" in defense counsel's court. (Doc. 52, p. 12, ¶ 9) ("On December 28, 2009, [plaintiff's counsel] sent [defense counsel] an e-mail rejecting Defendant's offer and providing a counter-offer . . . . In this same e-mail, [plaintiff's counsel] informed [defense counsel] that Defendant's [rejected] offer appeared to be in bad faith and [plaintiff's counsel] informed him that [Plaintiff] intended on filing the fee petition since it did not appear that further negotiations would be of any value."). Defense counsel not only ignored the last offer from plaintiff's attorney but, in fact, encouraged premature filing of the petition now at issue. (Doc. 52, p. 12, ¶ 10). ("On December 28, 2009, [plaintiff's counsel] received an e-mail from [defense counsel] stating that Plaintiff may need to file a fee petition.

3

[Defense counsel's] e-mail did not include an offer to settle attorneys' fees and costs."). This complete chronology of events illustrates that the instant motion was both timely and proper and ensures that Receivable will be paying Farrar's reasonable attorneys' fees pursuant to the applicable law.

## II.     Attorneys' Fees under the Fair Debt Collection Practices Act Generally

If a consumer is successful in bringing suit under the Fair Debt Collection Practices Act (hereinafter "FDCPA"), he is entitled to an award of costs and attorneys' fees, 15 U.S.C. § 1692k(a)(3) (2006); more precisely, the FDCPA states, in relevant part, as follows:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of . . . [among other things,] the costs of the action, together with a reasonable attorney's fee as determined by the court [in the case of any successful action to enforce the foregoing liability].[2]

*Id*. Such fees are mandatory in light of Congress' "private attorney general approach" in drafting the FDCPA. *Tolentino v. Friedman*, 46 F.3d 645, 651 (7th Cir. 1995); *see City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (A civil rights plaintiff, like an FDCPA plaintiff, "seeks to vindicate important . . . rights that cannot be valued solely in monetary terms."). It

---

[2]Of course, to be entitled to attorneys' fees, a plaintiff must be the "prevailing party"of the litigation.  "Plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Busche v. Burkee*, 649 F.2d 509, 521 (7th Cir. 1981) (quotations and citation omitted) (discussing attorneys' fees under 42 U.S.C. § 1988).  Final judgment or court-ordered disposition of a case is not necessary to create prevailing party status, as such status may be conferred upon settlement. *See, e.g., Webb v. James*, 147 F.3d 617, 623 (7th Cir. 1998) (involving the Americans with Disabilities Act and an offer of judgment pursuant to Federal Rule of Civil Procedure 68).

Here, the Court need not resolve the oft-disputed issue of which party represents the prevailing party.  Pursuant to the parties' settlement agreement, "[f]or purposes of the court's determination regarding attorney fees and for no other purpose, defendant [does not] contest plaintiff's contention that it [sic] is the prevailing party."  (Doc. 48, p. 20).

bears mentioning that this mandated payment of fees serves a somewhat punitive purpose. *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000) ("[A]ttorneys' fees [under the FDCPA] are punitive in the broad sense of the term in that they deprive the defendant of capital and thereby provide a strong incentive not to violate the law in the future.").

The plaintiff has the burden of proving that her request for attorneys' fees is reasonable. *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 780 (N.D. Ill. 1990); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("[T]he fee applicant bears the burden of establishing entitlement to an [attorneys' fee] award and documenting the appropriate hours expended and hourly rates.") (involving attorneys' fees under 42 U.S.C. § 1988).  Likewise, the burden of proving the hourly market rate for fees is on the applicant, however, once this is established, the burden shifts to the opposing party to demonstrate why a lower rate is warranted.  *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674-75 (7th Cir. 2004) (involving attorneys' fees under the Employee Retirement Income Security Act).

To determine reasonable attorneys' fees, "the district court generally begins by calculating the lodestar - the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended." *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 856 (7th Cir. 2009).  The lodestar amount may thereafter be adjusted by the district court to account for various factors, such as the complexity of the underlying legal issues, the degree of the prevailing party's success,[3] and the public's interest in the litigation.[4]

---

[3]In fact, the degree of success obtained is "the most critical factor" in assessing the reasonableness of a fee award. *Tolentino*, 46 F.3d at 652 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

In the context of a successful non-class action FDCPA claim, a plaintiff may recover to actual damages, up to $1,000 in statutory damages, and attorneys' fees.  15 U.S.C. § 1692k(a) (2006).  Since statutory damages serve as a more common remedy

*Id*. at 856-57.  Courts should also be mindful of duplicative work, excessive billing, and the proportionality between plaintiff's recovery and her requested attorneys' fees.  *See id*. at 857; *see also Stark*, 354 F.3d at 674 ("Hours spent are not reasonably expended if they are excessive, redundant, or otherwise unnecessary.").

### III.    Farrar's Request for Attorneys' Fees Is Somewhat Unreasonable and Will Be Reduced Accordingly

In calculating the lodestar amount, the Court does not take issue with the hourly rates claimed by plaintiff's counsel.  The $394.00 hourly rate of senior attorneys Adam Krohn and Gregory Moss, who have practiced consumer protection law for over thirteen years, is well-supported by the numerous exhibits of plaintiff's counsel, especially the affidavit of Andy Norman.  (*See* Doc. 48, p. 94-95).  Likewise, the lower billing rates of plaintiff's other counsel is commensurate with their experience and the industry standards.

---

under the FDCPA than actual damages, it is axiomatic that attorneys' fees "should not be mechanically linked to a plaintiff's award . . . and that it cannot be the case that the prevailing party can never have a fee award that is greater than the damages award[.]" *Schlacher*, 574 F.3d at 857 (quotations, citations, and bracket omitted).

[4]The *Tolentino* Court identified twelve factors that courts should consider when determining attorneys' fees.  They are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the plaintiff's attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Tolentino*, 46 F.3d at 652.

With that said, the Court does take issue with the amount of time billed by plaintiff's counsel in a relatively straightforward case. The parties did not engage in extensive discovery, did not take any depositions, and did not file any substantive motions. Although the Court is well-aware of Farrar's relative success in this lawsuit, as she recovered the maximum in statutory damages available under the FDCPA, as well as the affidavits of her attorneys and Andy Norman, this evidence cannot surmount the Court's view that some of her attorneys' billing is excessive, duplicitous, and unnecessary.

The Court is mindful that it "may not 'eyeball' and decrease the fee by an arbitrary percentage because of a visceral reaction that the request is excessive," *Schlacher*, 574 F.3d at 857; therefore, it will be addressing each biller individually, keeping in mind his or her particular work in this case and the time spent thereon.

Adam Krohn (hereinafter "Krohn"), a named partner at plaintiff's firm of Krohn & Moss, asserts a total of 4.5 hours spent on this case and bills at $394.00 per hour. Krohn conducted client intake, performed research to determine appropriate venue, and reviewed preliminary discovery. Although Krohn's skill and experience support his high billing rate, "it also makes the amount of time that [he] spends on a relatively simple task considerably more suspect." *Altergott v. Modern Collection Techniques, Inc.*, 864 F. Supp. 778, 781 (N.D. Ill. 1990). The Court finds Krohn's venue research to be unnecessary for an attorney of his experience, as the relevant venue statute, located at 28 U.S.C. § 1391(b), has remained unchanged for years. Likewise, the Court finds the extent of Krohn's other work to be excessive. Accordingly, the Court will allow him to bill for 3.0 hours at his $394.00 hourly rate, for a total of $1,182.00 in fees.

Gregory Moss (hereinafter "Moss"), the other named partner of Krohn & Moss, asserts a total of 0.3 hours spent on this case at an hourly rate of $394.00. Moss simply sat in on a "[t]elephonic CMC." (Doc. 48, p. 26). The Court does not find Moss' minimal billing to be unreasonable and will allow him to recover his requested total of $118.20 in fees.

James Pacitti (hereinafter "Pacitti"), an associate attorney at Krohn & Moss, graduated from law school in 1995. He asserts a total of 3.3 hours spent on this case at a rate of $340.00 per hour. Pacitti did work relating to the motion at issue, including review of time sheets, updating the biographies of the billing attorneys, drafting the affidavits of said attorneys, and ultimately preparing the fee petition. The Court finds much of Pacitti's billing to be reasonable, however, the Court fails to see why Receivable should have to pay for updates to the billing attorneys' biographies and Farrar offers no explanation of this issue. As such, the Court reduces Pacitti's billing time to 2.9 hours at an hourly rate of $340.00, for a total of $986.00.

Michael Agruss (hereinafter "Agruss"), another associate attorney at Krohn & Moss, completed law school in 2004. He claims 4.8 hours of work on the instant case and bills at an hourly rate of $290.00. Agruss did much of the work in drafting and filing the Complaint (Doc. 1) and corresponded with Farrar and defense counsel. The Court finds much of Agruss' billing to be excessive, especially with respect to the complaint, which is a mere five pages and is largely composed of stock text. Accordingly, the Court will reduce Agruss' time on this case to 2.5 hours at a rate of $290.00 per hour, for a total of $725.00.

Nicholas Bontrager (hereinafter "Bontrager") is yet another associate at Krohn & Moss. He billed the most time of any of Farrar's attorneys. More specifically, he asserts 9.7 hours at a rate of $225.00 by the hour. Bontrager worked on procedural motions, assisted with

discovery, and engaged in settlement discussions with defense counsel. In light of this case's limited discovery and the largely stock discovery that was used, Bontrager's request must be reduced. The Court will allow him to claim 6.0 hours at his normal hourly rate, for a total of $1,350.00.

Finally, Krohn & Moss allowed several paralegals/clerks to work on this case. These individuals billed a collective 10.6 hours at a rate of $125.00 an hour. Their work included ensuring proper service of process on Receivable, communicating with Farrar, and providing general assistance to the attorneys assigned to the case. The Court finds much of the paralegals' billing to be excessive and duplicitous. Receivable rightly points out that it should not have to pay for research regarding service of process, as it has been successfully served by Krohn & Moss in other litigation. Likewise, Receivable should not be liable for time spent by Farrar's attorneys in curing a defect in the proof of service. As such, the paralegals' fees will be reduced to 7.0 hours at their normal rate of $125.00 an hour, for a total of $875.00.

Adding up the adjusted fees, Farrar's attorneys' fees come to a total of $5,236.20. Having carefully studied *Schlacher* and *Tolentino*, the Court does not find a departure from this lodestar amount to be warranted. Receivable is therefore liable for the lodestar amount, plus the $350.00 filing fee that this Court imposes on all new cases, for a grand total of $5,586.20.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Farrar's Motion for Attorneys' Fees (Doc. 48). Specifically, the Court will allow Farrar to collect attorneys' fees but only in the amount of **$5,586.20 (five-thousand, five-hundred, and eighty-six dollars and twenty cents)**. Further, as abovementioned, the Court **GRANTS**

Farrar's Motion for Leave to File a Reply Brief (Doc. 52).

**IT IS SO ORDERED.**
**DATED: July 8, 2010**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**